T.C. Memo. 2005-36

UNITED STATES TAX COURT


YVONNE C. LOPEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2524-03.               Filed February 28, 2005.


Yvonne C. Lopez, pro se.

<u>Kenneth P. Dale</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  This case arises from a request for relief under section 6015[1] with respect to petitioner's 1992, 1993, 1994, and 1995 taxable years.  Respondent determined petitioner

_____

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

was not entitled to any relief from joint and several liability under section 6015. Petitioner timely filed a petition seeking review of respondent's determination. The issue for decision is whether respondent's denial of relief under section 6015(f) was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Tacoma, Washington, when her petition in this case was filed.

Background

During the years in issue, petitioner was married to Thomas W. Cowdery (Mr. Cowdery). In May 1997, petitioner and Mr. Cowdery divorced.

Petitioner is a high school graduate and has completed some college course work. During the years in issue, petitioner identified her occupation as either child care provider or teacher. Mr. Cowdery changed jobs frequently while married to petitioner, working in construction, drafting, and pyrotechnics.

During their marriage, petitioner and Mr. Cowdery maintained a joint bank account, and they discussed their household bills. Mr. Cowdery, however, generally handled their household finances. During the years at issue, petitioner was not aware of any problems with Mr. Cowdery's handling of their finances, but in

1999, she discovered he had made late bill payments that had adversely affected her credit report.

Tax Returns

Petitioner and Mr. Cowdery filed joint Federal income tax returns for 1992, 1993, 1994, and 1995. Their returns reflected unpaid income tax liabilities (tax liabilities) of $806, $1,729, $1,705, and $1,394 for 1992, 1993, 1994, and 1995, respectively. The tax liabilities resulted from underwithholding of wages attributable to both petitioner and Mr. Cowdery.

Mr. Cowdery had their joint returns prepared by a tax return preparer. Petitioner gave Mr. Cowdery her Forms W-2, Wage and Tax Statement, to take to the preparer. When petitioner and Mr. Cowdery received the completed returns and saw the amounts due, Mr. Cowdery assured petitioner that he had talked to the return preparer about payment plans and that he would make monthly payments on the liabilities. Petitioner thought Mr. Cowdery was making the payments on the tax liabilities because of Internal Revenue Service (IRS) payments she believed to be in envelopes she saw in their mailbox. Petitioner did not know exactly what was in the envelopes, however, and she never asked Mr. Cowdery what was in them. Petitioner also never saw any checks written to the IRS by Mr. Cowdery.

Sometime around October 1995, the IRS levied petitioner and Mr. Cowdery's bank account. Petitioner first became aware that

Mr. Cowdery was not making payments to the IRS because of the levy. Although petitioner was aware of the IRS action against their account, she nevertheless filed her 1995 return jointly with Mr. Cowdery.

Tax Liability Payments

On May 9, 1997, the County Clerk of Pierce County, Washington, entered a Decree of Dissolution with respect to petitioner and Mr. Cowdery's marriage. The divorce decree stated that Mr. Cowdery was responsible for providing spousal support to petitioner and for paying the IRS liabilities. Mr. Cowdery, however, consistently failed to make any such payments.

Petitioner received a court judgment against Mr. Cowdery for his failure to make the support and tax liability payments. On October 28, 1999, the County Clerk of Pierce County, Washington, entered a Judgment for Past Due Spousal Maintenance and Payments Made to IRS, which stated in pertinent part, the following:

3.5 JUDGMENT FOR PAST SPOUSAL MAINTENANCE

YVONNE LOPEZ shall have judgment against THOMAS COWDERY in the amount of $3,575.00 for unpaid spousal maintenance for the period from 6/16/98 through 7/15/99.

3.6 OTHER RECOVERY AMOUNTS

YVONNE LOPEZ shall have judgment against THOMAS COWDERY for $1,246.32 for the payments petitioner has made to the IRS.

Despite the judgment, however, petitioner received no money from Mr. Cowdery. Because of Mr. Cowdery's failure to pay the income

tax liabilities, petitioner also made payments to the IRS of $1,533,[2] $375, $916, and $510 for 1992, 1993, 1994, and 1995, respectively.[3]

Petitioner's Innocent Spouse Claim

On November 4, 1999, petitioner filed Form 8857, Request for Innocent Spouse Relief. Petitioner requested equitable relief under section 6015(f) for taxable years 1992, 1993, 1994, and 1995. On July 29, 2000, petitioner prepared and signed a Form 433-A, Collection Information Statement for Individuals. Petitioner also filed a completed Form 886-A, Innocent Spouse Questionnaire.

On October 31, 2002, respondent issued a Notice of Determination that denied petitioner's request for relief for each of the years in issue.[4] On February 7, 2003, petitioner's

---

[2]After petitioner's divorce, she filed her tax returns separately from Mr. Cowdery. The IRS kept petitioner's refunds from the years following the divorce to offset the prior tax liabilities. The $1,533 payment toward the 1992 liability thus includes refund offsets of $75, $75, $91, and $270, from 1993, 1996, 1997, and 1998, respectively.

[3]Respondent determined that if petitioner had filed separately rather than jointly with Mr. Cowdery during the years in issue, she would have owed $403, $902, $818, and $509 for each of those years, respectively. When respondent provided petitioner with his determination on Aug. 26, 2000, petitioner promptly obtained money orders for the amounts she would have owed and paid those amounts to the IRS.

[4]The notice of determination erroneously stated that relief was denied with respect to 1991, 1992, 1993, 1994, 1995, and 1996. Respondent concedes in his pretrial memorandum, however,
(continued...)

petition contesting respondent's determination was filed with this Court.  The petition did not conform with Rule 321(b).  Consequently, on February 11, 2003, we ordered petitioner to file a proper "Amended Petition for Determination of Relief From Joint and Several Liability on a Joint Return" (amended petition) by March 11, 2003.  Petitioner submitted an amended petition that we filed on March 12, 2003.

OPINION

In general, spouses who file joint Federal income tax returns are jointly and severally liable for the full amount of the tax liability.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  Pursuant to section 6015, however, a spouse may seek relief from joint and several liability.[5]

One form of relief from joint and several liability is equitable relief under section 6015(f).  Section 6015(f) provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and

---

[4](...continued) that the reference to 1991 and 1996 in the notice of determination was erroneous and that the only years in issue are 1992 through 1995.

[5]Sec. 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, but remaining unpaid as of such date.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.[6]

The Commissioner uses guidelines prescribed in Rev. Proc. 2000-15, 2000-1 C.B. 447, to determine whether a taxpayer qualifies for relief from joint and several liability under section 6015(f).[7]  We review the Commissioner's determination using an abuse of discretion standard.  See Washington v. Commissioner, 120 T.C. 137, 146 (2003); Butler v. Commissioner, supra at 292. Under this standard of review, we defer to the Commissioner's determination unless it is arbitrary, capricious, or without sound basis in fact.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  The taxpayer requesting section 6015(f) relief bears the burden of proof.  See Rule 142(a); Jonson v. Commissioner, supra at 113.

---

[6]Because petitioner seeks relief from underpayments of tax rather than understatements, relief under subsecs. (b) and (c) of sec. 6015 is not available to her.  Sec. 6015(b) and (c); see also Washington v. Commissioner, 120 T.C. 137, 145-147 (2003).

[7]On Aug. 11, 2003, the Commissioner issued Rev. Proc. 2003-61, 2003-2 C.B. 296, which supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of that date.

Before the Commissioner will consider a taxpayer's request for relief under section 6015(f), the taxpayer must satisfy seven threshold conditions listed in Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent concedes that petitioner satisfies these conditions.

A.   Revenue Procedure 2000-15, Section 4.02

Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448, provides that equitable relief will ordinarily be granted as to unpaid liabilities if the seven threshold conditions and each of the following three elements are satisfied:

> (a) At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse * * *;
>
> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and
>
> (c) The requesting spouse will suffer economic hardship if relief is not granted. * * *

Relief under Rev. Proc. 2000-15, sec. 4.02 is only available, however, to the extent that the unpaid liability is allocable to the nonrequesting spouse. Rev. Proc. 2000-15, sec. 4.02(2)(b).

Respondent concedes that petitioner satisfied the first element because she was divorced from Mr. Cowdery at the time she requested relief. The parties, however, dispute whether petitioner satisfied the second and third elements.

1.   Knowledge or Reason To Know

This element is satisfied if the requesting spouse did not know or have reason to know when she signed the returns that the taxes would not be paid.  Accordingly, petitioner must establish that it was reasonable for her to believe that Mr. Cowdery would pay the reported liabilities.

During their marriage, petitioner and Mr. Cowdery discussed their unpaid income tax liabilities as well as their other household finances.  Petitioner and Mr. Cowdery also maintained a joint bank account.  There is no evidence, and petitioner does not allege, that Mr. Cowdery kept their financial documents, such as bills or bank statements, from her.  Petitioner contends, however, that she never questioned Mr. Cowdery about the payments he said he would make on the liabilities, despite being aware of the annual underpayments of income tax shown on their joint returns.  Petitioner also does not appear to have requested any records from the IRS regarding what payments had been made, to have examined bank records for payments, or to have done anything at all to verify whether Mr. Cowdery made any payments toward the tax liabilities.  What petitioner did do was continue to file jointly with Mr. Cowdery after she knew he was not making payments to the IRS.

While we are sympathetic to petitioner's situation with her former husband, we have consistently applied the principle that

the provisions providing relief from joint and several liability are "'designed to protect the innocent, not the intentionally ignorant'". Morello v. Commissioner, T.C. Memo. 2004-181 (quoting Dickey v. Commissioner, T.C. Memo. 1985-478). Petitioner has not established that she did not have reason to know the tax liabilities shown on her returns for the years at issue would not be paid when she signed them and that it was reasonable for her to believe Mr. Cowdery would pay those liabilities. Consequently, petitioner does not satisfy the knowledge or reason to know element of Rev. Proc. 2000-15, sec. 4.02 and does not qualify for equitable relief under that section of the revenue procedure. For the sake of completeness, however, we also address the economic hardship factor.

    2.   <u>Economic Hardship</u>

Rev. Proc. 2000-15, sec. 4.02 requires that the determination of whether a requesting spouse will suffer economic hardship be based on rules similar to those in section 301.6343-1(b)(4), Proced. & Admin. Regs. Rev. Proc. 2000-15, sec. 4.02(1)(c). Economic hardship is present if satisfaction of the

tax liability in whole or in part will cause the taxpayer to be unable to pay her reasonable basic living expenses.[8]  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

In 2000, petitioner filed a Form 433-A with respondent. Petitioner reported on the Form 433-A that she was employed by the Puget Sound Blood Center as a technician, with an annual salary of approximately $25,600.[9]  Petitioner reported her monthly income as $2,133 and her monthly expenses as $2,078. Petitioner's stated monthly expenses included housing and utility expenses of $1,398, transportation expenses of $425, and health care expenses of $60.  Petitioner also included $195 of monthly credit card payments in her expenses but testified at trial she

---

[8]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., lists factors that will be considered in determining a reasonable amount for basic living expenses.  These factors include the taxpayer's age, employment status and history, ability to earn, number of dependents, extraordinary circumstances, and any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

[9]Petitioner did not include a Form W-2, Wage and Tax Statement, with her Form 433-A from the Blood Center.  She provided only a pay stub that showed her net pay for the pay period ending July 22, 2000 (the length of this pay period is not provided), and some year-to-date information regarding her salary.

no longer has any credit cards. Petitioner's reported assets consisted of a 1999 model Kia Sophia,[10] a "402B" account established through her employer,[11] and her home.

Petitioner purchased her home on February 1, 1999. As of February 16, 2004, the value of the home was $111,500. Petitioner purchased the home from her parents for $98,000. She obtained a $78,000 mortgage and made a $20,000 downpayment, the funds for which were given to her by her parents. She subsequently refinanced her mortgage, and its balance as of February 2004 was $101,000. Petitioner contends she did not use the gift from her parents or the money she received from the refinancing to pay the tax liabilities because "my ex-husband is supposed to pay it. I'm not."

Petitioner testified that her situation has changed since 2000 in that she no longer has credit card debt, has refinanced her home, and is now caring for a blind uncle, but that her situation is otherwise the same as when she filed the Form 433-A. Petitioner contends it would be a hardship for her to pay the tax liabilities because of her mortgage payments and the expense of caring for her uncle. She did not introduce into evidence any financial records regarding her current salary, basic living

---

[10]Petitioner reported that her Kia Sophia was worth $5,500 and that she had a $3,500 liability with respect to the car.

[11]The record is silent as to the value of the 402B account.

expenses, the existence and amount of other debts, or the nature and amount of the expenses she pays to care for her uncle. Consequently, we conclude that petitioner has failed to prove that she would be unable to pay her basic living expenses and would suffer economic hardship if relief under section 6015(f) were denied.

B.    Revenue Procedure 2000-15, Section 4.03

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2000-15, sec. 4.02, the Commissioner may nonetheless grant relief under Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.  Rev. Proc. 2000-15, sec. 4.03 provides that, where the seven threshold conditions have been satisfied and the requesting spouse does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable.  Rev. Proc. 2000-15, sec. 4.03(1) and (2), 2000-1 C.B. at 448-449, contains a list of positive and negative factors that the Commissioner will take into account in determining, on the facts and circumstances, whether to grant full or partial equitable relief under section 6015(f).  As Rev. Proc. 2000-15, sec. 4.03 makes clear, no single factor is determinative in any particular case, all factors are to be considered and weighed appropriately, and the listing of

factors is not intended to be exhaustive.  See <u>Washington v. Commissioner</u>, 120 T.C. at 148; <u>Jonson v. Commissioner</u>, 118 T.C. at 125.

Rev. Proc. 2000-15, sec. 4.03(1) lists the following six positive factors that the Commissioner will weigh in favor of granting equitable relief:

(a) <u>Marital status</u>.  The requesting spouse is separated * * * or divorced from the nonrequesting spouse.

(b) <u>Economic hardship</u>.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(c) <u>Abuse</u>.  The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

(d) <u>No knowledge or reason to know</u>.  In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid.  * * *

(e) <u>Nonrequesting spouse's legal obligation</u>.  The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) <u>Attributable to nonrequesting spouse</u>.  The liability for which relief is sought is solely attributable to the nonrequesting spouse.

Rev. Proc. 2000-15, sec. 4.03(2) lists the following six negative factors that the Commissioner weighs against granting equitable relief:

(a) <u>Attributable to the requesting spouse</u>.  The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse.

(b) <u>Knowledge, or reason to know</u>.  A requesting spouse knew or had reason to know * * * that the reported liability would be unpaid at the time the return was signed.  This is an extremely strong factor weighing against relief.  Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under §6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, * * *

(c) <u>Significant benefit</u>.  The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.  See §1.6013-5(b).

(d) <u>Lack of economic hardship</u>.  The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>.  The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>.  The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

The knowledge or reason to know factor, the economic hardship factor, and the legal obligation factor in Rev. Proc. 2000-15, sec. 4.03(2)(b), (d), and (f), respectively, are the opposites of the knowledge or reason to know factor, the economic hardship factor, and the legal obligation factor in Rev. Proc. 2000-15, sec. 4.03(1)(d), (b), and (e), respectively.  The attribution factor in Rev. Proc. 2000-15, sec. 4.03(2)(a) is substantially

the opposite of the attribution factor in Rev. Proc. 2000-15, sec. 4.03(1)(f). Consequently, in our review of the Commissioner's determination denying relief under section 6015(f), we have held that a finding with respect to the reason to know, economic hardship, legal obligation, and attribution factors ordinarily will weigh either in favor of or against granting equitable relief under section 6015(f). Ewing v. Commissioner, 122 T.C. 32, 45 (2004). We have also held that a finding that a requesting spouse did not receive a significant benefit from the item giving rise to the deficiency weighs in favor of granting relief under section 6015(f). Id. Finally, we treat evidence that the remaining positive and negative factors are not applicable as evidence weighing neither in favor of nor against granting equitable relief (i.e., as neutral). Id. In accordance with the above, we shall consider each of the positive and negative factors enumerated in Rev. Proc. 2000-15, sec. 4.03.

1. Positive Factors

a. Marital Status

Petitioner and Mr. Cowdery divorced in 1997. Respondent concedes this factor weighs in favor of granting relief.

b. Economic Hardship

For the reasons stated in our analysis of this factor under Rev. Proc. 2000-15, sec. 4.02, we conclude that petitioner has

failed to establish she will suffer economic hardship if she is not granted equitable relief. This positive factor does not apply.

### c. Abuse by Nonrequesting Spouse

Petitioner does not allege that Mr. Cowdery abused her. This positive factor does not apply. Ewing v. Commissioner, supra at 46; Washington v. Commissioner, supra at 149.

### d. No Knowledge or Reason To Know

For the reasons stated in our analysis of this factor under Rev. Proc. 2000-15, sec. 4.02, we conclude petitioner has failed to establish that she did not have reason to know when the returns were filed that the tax liabilities shown as due on the 1992, 1993, 1994, and 1995 returns would not be paid. This positive factor does not apply.

### e. Nonrequesting Spouse's Legal Obligation

Under petitioner and Mr. Cowdery's 1997 divorce decree, Mr. Cowdery bears the legal obligation for paying the tax liabilities for each of the years in issue. Respondent concedes this factor weighs in favor of granting relief.

### f. Liabilities Solely Attributable to Nonrequesting Spouse

The unpaid tax liabilities resulted from underwithholding of both petitioner's and Mr. Cowdery's wages, and, therefore, the liabilities are not solely attributable to Mr. Cowdery. Consequently, we conclude this positive factor does not apply.

2. <u>Negative Factors</u>

a. <u>Attributable to the Requesting Spouse</u>

Because the unpaid liabilities are attributable to both petitioner and Mr. Cowdery, this factor weighs against granting petitioner equitable relief.

b. <u>Knowledge or Reason To Know</u>

As discussed, <u>supra</u>, we conclude that petitioner had reason to know when she signed the returns that the tax liabilities would not be paid. This factor weighs heavily against granting petitioner equitable relief. Rev. Proc. 2000-15, sec. 4.03(2)(b).

c. <u>Significant Benefit</u>

Respondent does not contend that petitioner significantly benefited from the unpaid liabilities, and the record does not reflect otherwise. This factor weighs in favor of granting petitioner equitable relief.

d. <u>Lack of Economic Hardship</u>

As discussed, <u>supra</u>, petitioner has failed to establish that she will suffer economic hardship if relief is not granted. This negative factor applies and weighs against granting relief.

e. <u>Noncompliance With Federal Income Tax Laws in Subsequent Years</u>

Respondent does not contend that this factor applies, and he did not otherwise argue on brief or at trial that petitioner did not make a good-faith effort to comply with her Federal income

tax obligations in the years subsequent to those in issue here. Consequently, we conclude this negative factor does not apply. See Ewing v. Commissioner, supra at 46-47.

### f. Requesting Spouse's Legal Obligation

With respect to the positive counterpart to this factor, we concluded that Mr. Cowdery, rather than petitioner, bears the legal obligation to pay the liabilities at issue in this case. Consequently, this negative factor does not apply.

### 3. Conclusion

Three factors weigh in favor of granting petitioner relief. Although three factors also weigh against granting petitioner relief, the knowledge or reason to know factor weighs heavily against relief. All other factors are neutral. After considering all the facts and circumstances, we find that respondent did not abuse his discretion in denying petitioner equitable relief from joint and several liability under section 6015(f).

We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.