T.C. Memo. 2005-201


UNITED STATES TAX COURT


RUTH E. NEAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8506-03.              Filed August 22, 2005.


<u>J. Larry Broyles</u>, for petitioner.

<u>Edwina L. Jones</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  The issue for decision is whether petitioner is entitled to equitable relief from joint and several liability under section 6015(f) with respect to the following unpaid Federal income taxes that are attributable to income earned by petitioner's former spouse as an anesthesiologist:

| Year | Amount |
|------|--------|
| 1993 | $52,689 |
| 1994 | 31,191 |
| 1995 | 20,039 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Evans, Georgia.

In the late 1960s, petitioner graduated with a B.S. in chemistry from Xavier University located in New Orleans, Louisiana. In May of 1973, petitioner graduated with a medical degree from Howard University College of Medicine, located in Washington, D.C.

After graduating from medical school, petitioner completed a 1-year internship and a 3-year radiology residency also at Howard University Hospital.

On January 3, 1976, petitioner and Alimam Neal (Alimam) were married. At the time of their marriage, petitioner was 27 and Alimam was 28 years old. This marriage was petitioner's first and Alimam's second.

Alimam also obtained a medical degree and in 1977 completed his medical residency in the Department of Anesthesiology at Walter Reed Army Medical Center located in Washington, D.C.

In 1977, at the end of petitioner's and of Alimam's medical residencies, petitioner and Alimam moved to Augusta, Georgia, where petitioner has been employed full time as a radiologist at the hospital affiliated with the Medical College of Georgia and, since 1997, as a member of the faculty at the Medical College of Georgia. In 2002, petitioner received the Georgia State Medical Association's medallion, its highest honor, for "exemplary medical service and community contributions."

For 3 years after moving to Georgia in 1977, as part of his commitment to the Army relating to the costs of his medical school education, Alimam was employed at the Dwight David Eisenhower Army Medical Center as an anesthesiologist. In 1980, after completing his commitment to the Army, Alimam left military service and worked at the Medical College of Georgia for 1 year and thereafter established his own medical practice. From 1981 through the late 1990s, including the years at issue herein, Alimam has maintained his own medical practice with a specialty in anesthesiology.

In 1979, 1981, and 1985, petitioner and Alimam's three children were born.

During the years at issue herein, petitioner's only significant source of income was her salary from her employment as a radiologist and as a faculty member at the Medical College of Georgia. Each month, petitioner's salary was deposited into a separate checking account that she maintained.

During the years at issue herein, Alimam received income from his medical practice and from rental real estate, which real estate he separately owned.

As discussed below, during most of the years of their marriage, including the years at issue herein, petitioner herself, from her income, paid most of the family expenses. Alimam paid only a limited portion of the family expenses, and Alimam spent an exorbitant amount of his money on personal investments and other, nonfamily matters.

Using her income, petitioner paid her own personal expenses, one-half of the mortgage on the family residence, and most of the expenses of the three children, including the costs of the children's clothing and school supplies, private school tuition,[1] and various extracurricular activities such as football, soccer, gymnastics, piano, and ballet. Using her income, petitioner also purchased the groceries and other household supplies. Petitioner

---

[1] During the years at issue, private school tuition for the three children totaled $1,200 a month.

spent little on herself, and essentially all of petitioner's income in each year was spent on family expenses.

Other than a mandatory State retirement fund to which petitioner contributed, petitioner does not have significant savings.

Using his income, Alimam generally paid the other half of the monthly mortgage, the household utility bills, payments due on the various cars he purchased, the payments due on petitioner's one car, and his many personal expenses.

Throughout their marriage, petitioner and Alimam maintained separate checking accounts, and generally, the monthly mortgage payments were made with checks written by Alimam.

In 1989, Alimam filed for bankruptcy. Petitioner also signed the bankruptcy petition.

At the time of the above bankruptcy, Alimam inaccurately told petitioner that the above bankruptcy and their poor financial situation were caused by various tax shelter deductions, which Alimam had claimed on their joint Federal income tax returns and which had been audited and disallowed by respondent, resulting in large tax deficiencies. In fact, Alimam and petitioner's bankruptcy and tax problems related significantly to unpaid taxes attributable to Alimam's income from his medical practice. Around the same time, petitioner had heard from friends and medical colleagues that they also had

claimed tax shelter deductions that had been disallowed by respondent, and petitioner believed Alimam's explanation as to the reason for their financial difficulties and for the bankruptcy petition that was filed.

During the hearings relating to the above bankruptcy, petitioner first learned that Alimam had purchased in his own name, among other assets, a boat, a villa in Colorado, six or seven cars, and expensive fine art. Alimam had not informed petitioner of any of these purchases. This first bankruptcy case was closed on June 11, 1991. The record is unclear as to the resolution of this bankruptcy case.

A number of times during the years at issue, due to Alimam's failure to pay household utility bills, the family's utilities were shut off, and on one occasion, in order to keep the utilities on, petitioner pawned a Rolex watch Alimam had given her.

On June 16, 1995, Alimam again filed for bankruptcy, and again petitioner signed this bankruptcy petition. This time, Alimam inaccurately told petitioner that this second bankruptcy was caused by another audit by respondent in which respondent disallowed expenses claimed on their joint Federal income tax returns filed in the early 1990s relating to Alimam's medical practice.

Listed below are the assets included in the 1995 bankruptcy estate and an indication of whether the assets, at that time, were held in the name of petitioner, in the name of Alimam, or jointly.  The bankruptcy documents in evidence do not indicate whether the dollar amounts indicated for the assets reflect the estimated value or the cost of the assets.

| Asset | Petitioner | Alimam | Joint |
|---|---|---|---|
| Real property - Martinez, GA | -- | -- | $320,000 |
| Real property - Quincy, FL | -- | $ 35,000 | -- |
| Real property - Augusta, GA | -- | 183,000 | -- |
| Real property - Hilton Head Island, SC | -- | 75,000 | -- |
| Checking accounts | $ 200 | 800 | -- |
| Individual retirement account | -- | -- | 4,000 |
| State retirement plan | 77,000 | -- | -- |
| 1993 Mercedes automobile | 0* | -- | -- |
| 1982 Mercedes automobile | -- | 7,000 | -- |
| 1984 Dodge station wagon automobile | -- | 500 | -- |
| 1985 Ford LTD automobile | -- | 0 | -- |
| 1986 Ford Thunderbird automobile | -- | 4,500 | -- |
| 1992 Mercedes automobile | -- | 0* | -- |
| Household goods & clothes | -- | -- | 9,450 |
| Furs & jewelry | 2,000 | -- | -- |
| Total | $79,200 | $305,800 | $333,450 |

* Leased assets.

This second bankruptcy case was closed on May 15, 1996, and the record is unclear as to the resolution of this bankruptcy case.

At some point prior to 1996, petitioner learned that Alimam was having a number of extramarital affairs, including a long-term affair with a woman whom, with her child, Alimam financially supported.

On July 5, 1996, as a result of Alimam's mismanagement of the marital finances (including his failure to pay the taxes at issue herein), Alimam's extramarital affairs, and other marital

problems, petitioner, with their three children, left the marital home.  Petitioner and Alimam were divorced on April 14, 1998.

In the divorce decree of the Superior Court of Columbia County, State of Georgia, Alimam was ordered to pay all outstanding joint Federal income taxes "as well [as] any other future tax liability having been incurred during the course of the parties' marriage".

In the divorce proceeding, petitioner was not awarded alimony or any support payments from Alimam.  Alimam was ordered to pay monthly child support of $3,000 for the three children, which child support Alimam paid only sporadically.  Alimam was once incarcerated for failure to pay such child support.

Throughout their marriage and in spite of petitioner's requests, Alimam did not provide to petitioner any financial information relating to his medical practice, and petitioner was never shown any books and records relating to Alimam's medical practice.

During the years in issue, all of petitioner's annual income and her withheld taxes were reflected on Forms W-2, Wage and Tax Statement, which petitioner gave to Alimam each year prior to the preparation by Alimam's accountant of their joint Federal income tax returns.  The taxes withheld from petitioner's salary each year reflected essentially the total Federal income tax

liabilities that would have been due on petitioner's income had petitioner filed separate Federal income tax returns.

During the years at issue, Alimam did not have any taxes withheld from his income, and Alimam did not make any estimated tax payments relating to his income.

In connection with the preparation of petitioner and of Alimam's joint Federal income tax return for each of the years 1981 through 1996, Alimam would gather the information relevant to the preparation of the tax returns, including the Forms W-2 that petitioner provided to him, and take the information to his accountant.  The accountant would prepare the tax returns and give them to Alimam.  Alimam would sign the tax returns and then generally give the tax returns to petitioner to sign, after which Alimam would take the tax returns back from petitioner and mail to respondent the signed tax returns.

On their 1993 and 1995 Federal income tax returns, however, Alimam apparently signed petitioner's signature.

Year after year (from 1981 through 1996) and without petitioner's knowledge (and also apparently without his accountant's knowledge), in his mailing to respondent of petitioner and Alimam's tax returns, Alimam would not include any payment of the tax balances shown to be due on the tax returns as filed, which balances related to unpaid taxes attributable to Alimam's income from his medical practice.

Specifically with regard to the years at issue herein, on December 1, 1994, Alimam untimely mailed to respondent petitioner and Alimam's 1993 joint Federal income tax return on which return petitioner and Alimam's total joint Federal income tax liability was reflected as $72,991 and on which return the only taxes shown as paid were the $20,302 that petitioner had paid through income tax withholding.

On September 15, 1995, Alimam untimely mailed to respondent petitioner and Alimam's 1994 joint Federal income tax return on which return petitioner and Alimam's total joint Federal income tax liability was reflected as $52,902 and on which return the only taxes shown as paid were the $21,711 that petitioner had paid through income tax withholding.

On June 4, 1996, Alimam timely mailed to respondent petitioner and Alimam's 1995 joint Federal income tax return on which return petitioner and Alimam's total joint Federal income tax liability was reflected as $43,260 and on which return the only taxes shown as paid were the $23,221 that petitioner had paid through income tax withholding.

Petitioner did not meet Alimam's accountant until sometime in 1996 soon after which petitioner and Alimam separated.

Petitioner and Alimam's joint Federal income tax returns for 1993, 1994, and 1995 were accurately prepared by Alimam's

accountant, and respondent does not assert any tax deficiencies in the taxes reported thereon.

Petitioner understood and assumed that Alimam, when he mailed the above tax returns to respondent for 1993, 1994, and 1995, was including a payment for the full tax balances shown to be due.

As indicated above, however, Alimam did not include any payments in his mailing to respondent of the 1993, 1994, and 1995 joint Federal income tax returns.

Twice, petitioner's wages or bank account were levied in partial collection of the above unpaid joint Federal income taxes.

Only in 1996, after separating from Alimam and after speaking to Alimam's accountant and lawyer for the first time, did petitioner learn that Alimam had filed the above Federal income tax returns without including payments of the tax balances shown to be due thereon.

On February 8, 2000, petitioner made a timely election under section 6015(f) for equitable relief from joint and several liability relating to the above 1993, 1994, and 1995 unpaid taxes attributable to Alimam's income.  On April 22, 2003, respondent issued a notice of determination denying petitioner's request for equitable relief.

When notified of the instant Court proceeding, Alimam did not intervene, and Alimam does not challenge petitioner's eligibility for equitable relief from joint and several liability. Alimam was not called as a witness at trial. As of the time of trial, petitioner no longer has contact with Alimam, and Alimam apparently is no longer licensed to practice medicine.

Reflected in the table below, for the years at issue, are comparisons of petitioner's and of Alimam's separate earned income, estimates of petitioner's and of Alimam's "separate" Federal income tax liabilities, and the Federal income tax payments that were made for each year (reflecting primarily petitioner's withheld taxes), as well as the total amount of petitioner and of Alimam's joint Federal income tax liability reported on the tax returns and not challenged by respondent. Amounts estimated for the "separate" (sep.) tax liabilities of petitioner and of Alimam are based on respondent's computations of the portions of petitioner and of Alimam's total joint Federal income taxes for 1993, 1994, and 1995 that are attributable separately to petitioner and to Alimam.

| | Petitioner | | | Alimam | | | Joint |
|------|----------------|-------------------|-----------------|----------------|-------------------|-----------------|------------------------|
| Year | Earned income | Est. sep. tax liab. | Tax payments | Earned income | Est. sep. tax liab. | Tax payments | total tax liability |
| 1993 | $110,163 | $21,987 | $20,302 | $154,316 | $51,004 | 0 | $72,991 |
| 1994 | 116,759 | 23,459 | 21,711 | 106,180 | 29,443 | 0 | 52,902 |
| 1995 | 122,693 | 25,194 | 23,221 | 78,310 | 18,066 | 0 | 43,260 |

Petitioner did not significantly benefit from Alimam's failure to pay the tax balances shown to be due on their joint Federal income tax returns.

For 1996 and subsequent years, petitioner has continued to have income taxes withheld from her salary, has timely filed her separate individual Federal income tax returns, and has paid in full her Federal income tax liabilities.

Petitioner continues to support her three children financially, two of whom are adults and not currently attending school. On account of the bankruptcies, unpaid tax liabilities, resulting poor credit, and other financial problems arising from her marriage to Alimam, petitioner currently resides in a home and drives a car owned by friends. Since her divorce from Alimam, petitioner has not taken vacations, either with the children or separately.

OPINION

Generally, taxpayers filing joint Federal income tax returns are jointly and severally liable for all taxes due thereon. Sec. 6013(d)(3).

Taxpayers, however, may be relieved of joint and several liability under limited circumstances described in section 6015(b), (c), and (f). Petitioner alleges that, on the particular facts and circumstances of this case, respondent

abused his discretion under section 6015(f) in denying equitable relief to petitioner from joint and several liability.[2]

Respondent raises an issue as to the admissibility into evidence herein of facts not presented to respondent's Appeals office during the administrative hearing, asserts that he did not abuse his discretion in denying petitioner relief from joint and several liability, and, for the first time in his opening post-trial brief, raises a jurisdictional question as to whether we may review in this underpayment case respondent's denial of section 6015(f) relief.[3]  In Ewing v. Commissioner, 122 T.C. 32, 44 (2004), we held that we are not limited to a consideration of the facts presented to respondent's Appeals office, and in Ewing

---

[2]  Sec. 6015(f) provides:

Equitable Relief.--Under procedures prescribed by the Secretary, if--
(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
(2) relief is not available to such individual under subsection (b) or (c),
the Secretary may relieve such individual of such liability.

[3]  In respondent's pretrial memorandum, in respondent's opening statement at trial, throughout the trial, and in respondent's reply brief, respondent makes no mention of the jurisdictional question.  Only in respondent's opening posttrial brief does respondent raise this jurisdictional question and only by way of an obscure sentence in the middle of arguments relating to other issues.  Respondent does not identify this jurisdictional question as a discrete issue in this case, and respondent provides no argument on this jurisdictional question.

v. Commissioner, 118 T.C. 494, 506-507 (2002), we held that we have jurisdiction to review claims for section 6015(f) relief similar to petitioner's claim.

Under section 6015(f), whether it would be inequitable for a requesting spouse to be held jointly liable for unpaid taxes "requires a careful consideration of all possible factors that are relevant" to the inquiry. Alt v. Commissioner, 101 Fed. Appx. 34, 39-40 (6th Cir. 2004) (quoting Silverman v. Commissioner, 116 F.3d 172, 175 (6th Cir. 1997), revg. T.C. Memo. 1996-69), affg. 119 T.C. 306 (2002).

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. 447, 448-449, sets forth guidelines or factors to consider in deciding claims for equitable relief under section 6015(f) as follows:

> (1) Whether the requesting spouse will suffer economic hardship;
>
> (2) Whether the requesting spouse, at the time the return was signed, had knowledge or reason to know that the liability reported on the return would not be paid;
>
> (3) Whether the nonrequesting spouse has a legal obligation to pay the unpaid joint Federal income taxes;
>
> (4) Whether the underpayments of joint Federal income taxes are attributable to the nonrequesting spouse;
>
> (5) Whether the spouses are separated or divorced;
>
> (6) Whether the requesting spouse suffered abuse by the nonrequesting spouse;
>
> (7) Whether the requesting spouse received significant benefit, beyond normal support, as a result of the underpayments of joint Federal income taxes; and

(8) Whether the requesting spouse made a good faith effort to comply with the Federal income tax laws in years following the years to which the request for relief relates.

Generally, no single factor will control whether equitable relief will be granted in a particular case. Rather, all relevant facts will be considered and weighed appropriately, and the above guidelines are not intended to be exhaustive. Ewing v. Commissioner, 122 T.C. at 48; Rev. Proc. 2000-15, sec. 4.03(2).

For example, other factors that have been considered by this Court include whether an understatement or underpayment of tax was the result of concealment, overreaching, or other wrongdoing on the part of the nonrequesting spouse. See, e.g., Ewing v. Commissioner, 122 T.C. at 48-49.

In Lopez v. Commissioner, T.C. Memo. 2005-36, relief was not granted because, although various facts weighed in favor of the taxpayer, the taxpayer's knowledge and financial resources weighed heavily against granting relief. In Keitz v. Commissioner, T.C. Memo. 2004-74, relief was granted because the taxpayer's lack of knowledge of the underpayment outweighed the absence of economic hardship.

As listed below, in this case, it has been established that most of the guidelines or factors listed in Rev. Proc. 2000-15, supra, weigh in favor of granting petitioner relief from joint tax liability for 1993, 1994, and 1995 with regard to the unpaid taxes attributable to Alimam's income from his medical practice:

(1) Under the divorce decree, Alimam has a legal obligation to pay the unpaid taxes due for the years petitioner and Alimam were married, including 1993, 1994, and 1995; (2) essentially all of the underpayments at issue herein are attributable to Alimam; (3) petitioner and Alimam are currently divorced; (4) petitioner did not receive a significant benefit from the unpaid taxes; and (5) petitioner has, throughout her marriage with Alimam and for subsequent years, made a good faith effort to comply with the tax laws with regard to her income.

The two remaining factors (whether petitioner had knowledge of or reason to know of Alimam's nonpayment of the taxes due and whether petitioner would suffer economic hardship if not granted relief from joint and several liability) are more difficult questions.

Petitioner's Knowledge of or Reason To Know
of the Nonpayment of the Tax

In determining whether petitioner, at the time the tax returns were signed, had knowledge or reason to know that the tax reported on the returns would not be paid, relevant factors include petitioner's level of education, petitioner's involvement in the family's financial affairs, petitioner's lifestyle, standard of living, and spending patterns, and Alimam's evasiveness and deceit concerning the marital finances.  See Levy v. Commissioner, T.C. Memo. 2005-92 (citing Kistner v.

Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463; Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63).

Respondent argues that petitioner should be regarded as having had constructive knowledge of the nonpayment by Alimam of the taxes reflected on petitioner and Alimam's 1993, 1994, and 1995 joint Federal income tax returns.

Respondent argues that the unpaid taxes contributing to the bankruptcy filings and the garnishment of petitioner's wages should have put petitioner on notice that Alimam would not pay the taxes for 1993, 1994, and 1995. To the contrary, Alimam misrepresented to petitioner that the unpaid taxes for years before 1993 related to tax deficiencies that had been determined by respondent, which explanation petitioner believed, and which belief we find reasonable and credible.

Respondent argues that petitioner should be treated as having had constructive knowledge that the taxes reflected on the tax returns for 1993, 1994, and 1995 would remain unpaid because she had a duty of inquiry.

On the particular facts of this case, however, where, among other things, filed tax returns accurately reflected the correct tax liabilities, nonpayment of the balances of the taxes shown to be due on the returns was concealed by Alimam, and petitioner was not otherwise put on notice of the nonpayment, we will not treat

petitioner as having had constructive knowledge of the unpaid taxes relating to Alimam's income.

Economic Hardship

Generally, economic hardship for purposes of section 6015(f) is defined as the inability to meet "basic living expenses." Alt v. Commissioner, 101 Fed. Appx. 34, 44 (6th Cir. 2004), affg. 119 T.C. Memo. 306 (2002) (citing sec. 301.6343-1(b)(4), Proced. & Admin. Regs).[4]

Petitioner argues that in spite of the salary she receives as a medical doctor, she would suffer economic hardship if not granted equitable relief herein.  Petitioner notes that she supports her youngest child and her two older children, that each month she just breaks even with her finances, and that she has a poor credit rating.

Although for many years petitioner has experienced financial problems as the result of Alimam's conduct and although petitioner does not have any significant equity in any assets, the facts before us are inconclusive as to the degree to which petitioner would suffer economic hardship if she were denied

---

[4]  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs., provides--

Economic hardship--(i) General rule.  The levy is creating an economic hardship due to the financial condition of an individual taxpayer.  This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses.

relief from joint liability herein.  We note particularly that no financial records as to petitioner's net worth were placed in evidence.

Conclusion

Taking into account all of the facts and circumstances before us in this case and balancing the above relevant guidelines and factors, we conclude that it would be inequitable to hold petitioner liable for the balances due relating to petitioner and Alimam's 1993, 1994, and 1995 joint Federal income tax liabilities and that are attributable to Alimam.

We note particularly the following:  Alimam's legal obligation relating to the unpaid taxes, the fact that the taxes in issue are attributable to Alimam's income, Alimam's deception with regard to his investments and nonpayment of the taxes due, the absence of any significant benefit to petitioner from Alimam's failure to pay the taxes, Alimam's exclusion of petitioner from the tax return preparation process and from his financial affairs, petitioner's payment of the majority of the family's expenses and her continued support of the children, and petitioner's payment every year of the Federal income taxes attributable to her income.

On the facts of this case, under section 6015(f), petitioner is entitled to equitable relief from joint and several liability with respect to the unpaid taxes at issue herein.

To reflect the foregoing,

Decision will be entered

under Rule 155.[5]

---

[5] The Rule 155 computation in this case is to take into account the nominal unpaid taxes for 1993, 1994, and 1995 that appear to be attributable to petitioner's income.