T.C. Summary Opinion 2014-63


UNITED STATES TAX COURT


JUANITA E. JACKSON, Petitioner,
AND BURT JACKSON, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8552-13S.                    Filed July 7, 2014.


Juanita E. Jackson, pro se.

Burt Jackson, pro se.

John D. Ellis, for respondent.


SUMMARY OPINION


DEAN, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from petitioner's request for relief from joint and several liability under section 6015 with respect to an underpayment of Federal income tax for 2009. Respondent denied petitioner relief from joint and several liability under section 6015(f). The issue for decision is whether petitioner is entitled to relief under section 6015(f) for 2009.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Maryland when she filed her petition.

Petitioner married intervenor in 2001. Petitioner is employed by the Social Security Administration as a paralegal specialist and has worked there for 31 years. She has a bachelor of science degree in healthcare management. As part of her coursework, she completed a course entitled "Introductory Accounting for Healthcare Management".

Intervenor worked for an architectural firm until he lost his job during the financial crisis in 2008 or 2009. As a result, intervenor was unemployed for six months at the beginning of 2009. While he was unemployed, he withdrew money from his retirement accounts to help support the household. Intervenor accepted a position as project manager at SHW Group LLP (SHW Group) and began working again on June 22, 2009, at an annual salary of $85,000.

In 2009 both petitioner and intervenor took distributions from their respective retirement accounts. Petitioner took a distribution of $38,000 from her thrift savings plan account, and Federal tax of $3,800 was withheld on the distribution. Intervenor took a distribution of $44,204 from an individual retirement account at SECU Credit Union and a distribution of $10,163.50 from his account with Fascore Institutional Services. No tax was withheld on either of the distributions to intervenor. Petitioner and intervenor were not sure that intervenor's new job was going to be permanent, so they wanted to pay down some of their debts. Intervenor used a portion of his distributions to pay off his automobile loan. Petitioner used her distribution to pay off a timeshare purchase, to pay tuition for petitioner and intervenor's minor child, and for other expenses.

Petitioner and intervenor also earned income in 2009. Petitioner received $98,651.64 in wage income from the Social Security Administration and elected to

have $6,929.07 in Federal income tax withheld from her wages. Intervenor received wage income totaling $50,622.42 in 2009 and elected to have $4,811.85 in Federal income tax withheld. While intervenor was unemployed, he applied for and received unemployment compensation of $7,605 from the District of Columbia and did not elect to have Federal income tax withheld from this compensation.

During 2009 petitioner and intervenor were in arrears with their mortgage by about $25,000. Petitioner's parents gave her money to help pay household expenses while intervenor was still living in the home.

Since their marriage in 2001 petitioner and intervenor have prepared their tax returns using TurboTax. On or about April 15, 2010, petitioner and intervenor timely filed a joint Form 1040, U.S. Individual Income Tax Return, for tax year 2009. Petitioner prepared the return using TurboTax, and intervenor did not participate in the preparation of the return. The return reported a balance due of $23,246. Petitioner and intervenor included with the return a Form 9465, Installment Agreement Request, requesting an installment agreement with a payment of $350 per month to pay the liability. The first $350 payment was included with the return.

Intervenor's job with SHW Group was terminated on May 25, 2010. Petitioner and intervenor filed a joint Form 1040X, Amended U.S. Individual Income Tax Return, for 2009 dated May 26, 2010. The amended return claimed a dependent not listed on the original return and reclassified various retirement distributions made during the 2009 tax year. The amended return reported a balance due of $22,200, and respondent accepted the amended return as filed.

Petitioner filed her 2010, 2011, and 2012 Federal income tax returns as married filing separately. For 2010 petitioner received a small refund. For 2011 and 2012 petitioner filed tax returns but did not pay in full the amounts reported as due on the returns. Petitioner claimed 10 exemptions for withholding purposes for 2011. At the time of trial petitioner owed a balance for the 2011 tax year. Petitioner asserted at trial that the balance for the 2012 tax year had been paid in full. Respondent, however, provided an account transcript showing a balance due for the 2012 tax year. Petitioner entered into an installment agreement with the Internal Revenue Service (IRS) to pay $300 per month on her 2011 and 2012 tax liabilities. The installment agreement was confirmed by letter dated October 29, 2013.

On April 11, 2011, petitioner filed Form 8857, Request for Innocent Spouse Relief. On January 23, 2013, the IRS issued a final determination denying

petitioner's request for innocent spouse relief. On April 17, 2013, petitioner timely filed a petition with this Court seeking review of respondent's determination. At the time she filed her request for relief, as well as at the time she filed her petition, petitioner resided with intervenor. Intervenor moved out of the marital home in October 2013, and petitioner and intervenor are currently involved in divorce proceedings. Pursuant to section 6015(e)(4) and Rule 325, Intervenor filed a timely notice of intervention in this case to oppose petitioner's request for relief.

## Discussion

In general, a spouse who files a joint Federal income tax return is jointly and severally liable for the entire tax liability. Sec. 6013(d)(3). However, a spouse may be relieved from joint and several liability under section 6015(f) if: (1) taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax; and (2) relief is not available to the spouse under section 6015(b) or (c). Sec. 6015(f)(1) and (2).

Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax and do not apply in the case of underpayments of tax reported on joint tax returns. Sec. 6015(b)(1)(B), (c)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v.

Commissioner, 120 T.C. 62, 66 (2003). Because petitioner seeks relief from an underpayment of tax, she is not entitled to relief under section 6015(b) or (c) and may look only to section 6015(f) for relief from joint and several liability.

The Commissioner has published revenue procedures listing the factors that are normally considered in determining whether section 6015(f) relief should be granted. See Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296. The Court considers these factors in the light of the attendant facts and circumstances, but we are not bound by them. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91.

In determining whether petitioner is entitled to section 6015(f) relief we apply a de novo standard of review as well as a de novo scope of review. See Porter v. Commissioner, 132 T.C. 203 (2009); Porter v. Commissioner, 130 T.C. 115 (2008); see also Commissioner v. Neal, 557 F.3d 1262 (11th Cir. 2009), aff'g T.C. Memo. 2005-201. Petitioner bears the burden of proving that she is entitled to relief. See Rule 142(a); Porter v. Commissioner, 132 T.C. at 210; Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

I.      Threshold Conditions for Granting Relief

The revenue procedure guidelines begin by establishing threshold requirements that, respondent contends, must be satisfied before an equitable relief request may be considered.  See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400.  Those conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions,[1] the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.  If the liability is partially attributable to the requesting spouse, then relief can be considered only for the portion of the liability

_____

[1]The IRS will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attributable (in full or in part) to the requesting spouse if any of the following exceptions apply:  (1) attribution due solely to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. 397, 399-400.

attributable to the nonrequesting spouse. Id. Respondent does not dispute that petitioner satisfies each of the threshold conditions.

II. Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is no longer married to, is legally separated from, or has not been a member of the same household as the other person at any time during the 12-month period ending on the date the Service makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. The requesting spouse must satisfy all three conditions in order to qualify for a streamlined determination. Id. Because petitioner was not divorced or legally separated from intervenor on the date respondent made the determination, and was a member of the same household as intervenor during the 12-month period ending on the date of the determination, she did not qualify for a streamlined determination of relief.

III.    Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for streamlined relief, a requesting spouse may still be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-401. The guidelines list the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief: (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. Id.

In making the determination under section 6015(f), the Court considers these factors as well as any other relevant factors. No single factor is determinative, and all factors shall be considered and weighed appropriately. Pullins v. Commissioner, 136 T.C. at 448; Haigh v. Commissioner, T.C. Memo. 2009-140. Any indication of abuse or the exercise of financial control by the nonrequesting spouse is a factor that may affect the application of the other factors. Rev. Proc. 2013-34, sec. 4.03.

A.     <u>Marital Status</u>

If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2). For purposes of this section a requesting spouse will be treated as being "no longer married to the nonrequesting spouse" as of the date the IRS makes its determination. Rev. Proc. 2013-34, sec. 4.02(1), 4.03(2)(a). The Court makes its determination of marital status as of the time of trial. <u>Wilson v. Commissioner</u>, T.C. Memo. 2010-134, <u>aff'd</u>, 705 F.3d 980 (9th Cir. 2013). Petitioner and intervenor were not divorced or legally separated at the time of trial. This factor is neutral.

B.     <u>Economic Hardship</u>

Generally, economic hardship exists when collection of the tax liability will render the requesting spouse unable to meet basic living expenses. Rev. Proc. 2013-34, sec. 4.03(b), 2013-43 I.R.B. at 401. If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor may be neutral. <u>Id.</u> Petitioner's request for innocent spouse relief indicated that her monthly income was approximately $7,509 and that her monthly expenses were approximately $7,300. Petitioner's yearly income has increased from $98,000 to $104,000 since she submitted the request for relief, and her expenses have decreased because of a modification to her first mortgage. The first

mortgage payment was reduced from $3,540 when she filed her request to $2,777.61 at the time of trial, and her real property taxes were "significantly reduced" as a result of a reassessment by the State of Maryland. On the basis of the record, petitioner has not proven that she will suffer economic hardship if the Court denies her relief. This factor is neutral.

C. Knowledge or Reason To Know

In the case of an income tax liability that was properly reported but not paid, consideration is given to whether as of the date the return was filed the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return. Id. sec. 4.03(c)(ii). This factor will weigh in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Id. This factor will weigh against relief if, on the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return. Id. A reasonable expectation of payment will be presumed if the spouses submitted a request for an installment agreement to pay the tax reported as due on the return. Id. To benefit from the presumption, the request for an installment agreement must be filed by the later of 90 days after the

due date for payment of the tax or 90 days after the return was filed. Id. And it must not be unreasonable for the requesting spouse to believe that the nonrequesting spouse will be able to make the payments contemplated in the requested installment agreement. Id.

In making the determination whether the requesting spouse had reason to know, consideration is given to various factors, including: (1) the requesting spouse's level of education, (2) the requesting spouse's degree of involvement in the activity generating the income tax liability, (3) the requesting spouse's involvement in business and household financial matters, and (4) the requesting spouse's business or financial expertise. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

Respondent argues that it was unreasonable for petitioner to believe when she signed the return at issue that intervenor would pay the tax liabilities. Petitioner's testimony, as well as the stipulated facts, shows that she was very involved in the family's finances and was well aware of intervenor's poor financial situation. Petitioner and intervenor each paid a portion of the family's expenses. Intervenor's periodic unemployment and lower salary and the family's apparent financial problems indicate that petitioner had reason to know that intervenor would not be able to pay the liability. Moreover, petitioner prepared

the joint return and the amended return for the year in issue. When she prepared the original return it showed a balance due of $23,246, and she remitted only $350 with the return. When she prepared the amended return, petitioner knew that intervenor had lost his position with SHW Group and she saw that there was a balance due of over $22,000. Although petitioner submitted with the original 2009 return a Form 9465 that listed SHW Group as intervenor's employer, petitioner prepared the return, and presumably the Form 9465 filed with the return, without intervenor's participation.

Petitioner has a college degree and has taken an accounting course. The Court finds petitioner's argument that the installment agreement gave her a basis to believe that intervenor would pay the 2009 tax liability unpersuasive. See Stolkin v. Commissioner, T.C. Memo. 2008-211 ("[We] have consistently found that a requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that his or her ex-spouse will pay the tax liability."). Petitioner is a smart and responsible person, and given her situation, the Court finds her alleged lack of knowledge improbable. Accordingly, this factor weighs against relief.

D.    Legal Obligation

This factor will be neutral if the spouses are not separated or divorced, or the divorce decree or agreement is silent as to any obligation to pay the outstanding income tax liability. Rev. Proc. 2013-34, sec. 4.03(d), 2013-43 I.R.B. at 402. At the time of trial petitioner and intervenor were not yet divorced, nor did they have a divorce decree or legally binding agreement regarding the outstanding tax liability. This factor is neutral.

E.    Significant Benefit

This factor considers whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. Id. sec. 4.03(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. This factor will weigh in favor of relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit, or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Rev. Proc. 2013-34, sec. 4.03(e).

Intervenor used at least a portion of the funds he withdrew from his various retirement accounts to pay the balance of his car loan, on which petitioner was a cosigner. Intervenor used the rest of funds he withdrew to support the household

and pay bills. From the record, any benefit petitioner received from the unpaid tax liability was not in excess of normal support. This factor weighs in favor of relief. See, e.g., Butner v. Commissioner, T.C. Memo. 2007-136.

F.    Compliance With Income Tax Laws

This factor considers whether the requesting spouse has made a good-faith effort to comply with the income tax laws in tax years after the year for which relief is requested. Rev. Proc. 2013-34, sec. 4.03(f), 2013-43 I.R.B. at 402. If the requesting spouse remains married to the nonrequesting spouse but files separate returns, this factor will weigh in favor of relief if the requesting spouse is in compliance with the tax laws and will weigh against relief if the requesting spouse is not. Id. If the requesting spouse made a good-faith effort to comply with the tax laws but was unable to fully comply, then this factor will be neutral. Id.

Petitioner filed separate tax returns for the taxable years 2010, 2011, and 2012, and at the time of trial she had balances due for tax years 2011 and 2012. Petitioner claimed 10 exemptions for withholding purposes for 2011 because, she testified, she had "high mortgage interest" and property taxes. Petitioner is not in compliance with the tax laws and has not shown that she was unable to comply despite a good-faith effort. This factor weighs against relief.

G.    Mental or Physical Health

This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns for which the request for relief relates were filed (or at the time the requesting spouse reasonably believed the return or returns were filed) or at the time the requesting spouse requested relief. Id. sec. 4.03(g), 2013-43 I.R.B. at 403. The IRS considers the nature, extent, and duration of the condition, including the ongoing economic impact of the illness. Id. If the requesting spouse was not in poor physical or mental health, this factor is neutral. Id. Petitioner was not in poor physical or mental health at the time the joint return was filed or when she brought this action for relief; this factor is neutral. See Wilson v. Commissioner, T.C. Memo. 2010-134.

IV.    Conclusion

Weighing all the facts and circumstances, we are not persuaded that it would be inequitable to deny petitioner spousal relief under section 6015(f). As the preceding discussion shows, there is one factor that weighs in favor of relief, two factors that weigh against relief, and four factors that are neutral. Considering that petitioner knew or had reason to know that intervenor would not or could not pay the tax liability reported on the return, and in the absence of economic

hardship, we conclude that it would not be inequitable to deny petitioner relief under section 6015(f).

Decision will be entered

for respondent.